```
 1                IN THE UNITED STATES DISTRICT COURT
 2               FOR THE WESTERN DISTRICT OF MICHIGAN
 3                         SOUTHERN DIVISION
 4      UNITED STATES OF AMERICA,
 5                 Plaintiff,          No: 1:17cr32
 6       vs.
 7      RYAN ARNEAL LANE,
 8                 Defendant.
 9
10      Before:
11                          THE HONORABLE RAY KENT
                            U.S. Magistrate Judge
12                          Grand Rapids, Michigan
                              May 8, 2017
13                          Plea Proceedings
14      APPEARANCES:
15                 MR. ANDREW BIRGE, U.S. ATTORNEY
                   By:  MR. MARK COURTADE
16                 330 Ionia Avenue NW
                   PO Box 208
17                 Grand Rapids, MI 49501-2404
                   616-456-2404
18                         On behalf of the Plaintiff;
19                 MR. JOHN SHEA
                   John A. Shea
20                 120 N. Fourth Avenue
                   Ann Arbor, MI 48104
21                 734-995-4646
                           On behalf of the Defendant.
22
23
        TRANSCRIBED BY:  MS. KATHY J. ANDERSON, RPR, FCRR
24
25
```

```
 1                          May 8, 2017
 2                     PROCEEDINGS, 11:10 a.m.
 3           THE CLERK:  Please be seated.
 4           THE COURT:  This is 17cr32, United States versus Ryan
 5   Arneal Lane.  Mr. Courtade appears on behalf of the United
 6   States, and Mr. Shea on behalf of Mr. Lane.
 7           Mr. Lane, we're here this morning because your lawyer
 8   tells me that you've decided to change your plea from not
 9   guilty to guilty pursuant to the terms of a written plea
10   agreement.  Is that right?
11           THE DEFENDANT:  Yes, Your Honor.
12           THE COURT:  Mr. Lane, how far did you get in school?
13           THE DEFENDANT:  College graduate.
14           THE COURT:  Okay.  Where did you graduate from
15   college?
16           THE DEFENDANT:  Michigan State University.
17           THE COURT:  What year?
18           THE DEFENDANT:  2007.
19           THE COURT:  What was your degree in?
20           THE DEFENDANT:  Nutritional sciences.
21           THE COURT:  Do you have any physical or mental
22   condition that would make it difficult for you to understand
23   the charges against you or what's happening in court?
24           THE DEFENDANT:  No, Your Honor.
25           THE COURT:  In the last 24 hours, have you had any
```

drugs, alcohol or medicine?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Lane, you have the right to have this hearing conducted by Judge Janet Neff.  Judge Neff is the trial judge assigned to your case and the judge who will sentence you if your plea of guilty is accepted.  Judge Neff is a United States District Judge.  She was appointed for life under the Constitution.  I am not a United States District Judge.  I'm a magistrate judge.  I was appointed under a statute and serve an eight-year term.

Unlike Judge Neff, I can't accept your plea of guilty or find you guilty.  What I can do with your consent is to ask you the questions Judge Neff would ask if she were here, and advise you of your rights as she would, and then prepare a written report to her recommending that she either accept or reject your plea.

Do you understand the difference between Judge Neff and me?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  And you understand you have the right to have this hearing before Judge Neff?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  But you've decided to consent to me handling the hearing in her place?

THE DEFENDANT:  Yes.

1  THE COURT: All right. We're going to project a
2  consent form up on the screen. This consent form appears to
3  contain your decision to consent to me handling the hearing.
4  Is that your signature near the bottom of the form?
5  THE DEFENDANT: Yes, it is, Your Honor.
6  THE COURT: Did you read and understand the form
7  before you signed it?
8  THE DEFENDANT: Yes, I did, Your Honor.
9  THE COURT: Did anybody threaten you, coerce you or
10  promise you anything to get you to consent to my handling this
11  hearing?
12  THE DEFENDANT: No, Your Honor.
13  THE COURT: Was that a free will and voluntary
14  decision by you?
15  THE DEFENDANT: Yes, it was.
16  THE COURT: Mr. Lane, you still even now have the
17  right to remain silent. You don't have to say anything to me
18  about the charges against you if you don't want to. However,
19  if we go forward with your guilty plea hearing here this
20  morning I'll be asking you questions; in answering those
21  questions you'll be giving up both the right to remain silent,
22  and the presumption of innocence. Moreover, before I ask you
23  those questions, I'm going to have you placed under oath. If
24  you were then to answer any of my questions falsely, you could
25  be charged with perjury or making a false statement which are

1  separate federal crimes carrying their own penalties.  Do you
2  understand that?
3           THE DEFENDANT:  Yes, I do, Your Honor.
4           THE COURT:  Do you still wish to go forward?
5           THE DEFENDANT:  Yes, I do, Your Honor.
6           THE COURT:  If you would, please, then, Mr. Lane
7  please stand and raise your right hand and I'll have you placed
8  under oath.
9           RYAN ARNEAL LANE, DEFENDANT, WAS DULY SWORN
10          THE COURT:  Mr. Lane, you have the right to a lawyer.
11 You hired Mr. Shea to act as your lawyer.  Let me just say that
12 if at any time you were unable to continue Mr. Shea as your
13 lawyer for any reason, you need only ask me, and if you qualify
14 financially, I will appoint a lawyer to represent you.  Do you
15 understand that?
16          THE DEFENDANT:  Yes, Your Honor.
17          THE COURT:  Have you been satisfied with Mr. Shea's
18 representations of you thus far?
19          THE DEFENDANT:  Yes, Your Honor.
20          THE COURT:  Mr. Lane, even now you still have the
21 right to persist in your plea of not guilty.  You remain
22 presumed innocent of all the charges against you; the
23 government still has the burden of proving you guilty beyond a
24 reasonable doubt on each and every element of the crimes it's
25 charged you with.  That would occur at a speedy and public

1 trial before 12 jurors drawn from the community.  At that trial
2 you would have the right through Mr. Shea to confront and
3 cross-examine the government's witnesses, to call your own
4 witnesses and have the Court order them to appear and testify;
5 you would have the right to present other evidence which you
6 believe demonstrates you're not guilty of these charges; and
7 finally, you would have the right to either testify in your own
8 defense or remain silent and not have your silence used against
9 you in any way.
10                  If you go forward with your guilty plea, however,
11 there won't be a trial of any kind and you'll be giving up all
12 of the rights I have just described except the right to
13 continue being represented by Mr. Shea.
14                  Do you understand that?
15                  THE DEFENDANT:  Yes, Your Honor.
16                  THE COURT:  Do you still wish to go forward?
17                  THE DEFENDANT:  Yes, Your Honor.
18                  THE COURT:  Under the terms of the plea agreement,
19 you'll be pleading guilty to Count I which charges you with the
20 crime called conspiracy to distribute cocaine.  In federal
21 criminal law, a conspiracy is simply an agreement between two
22 or more people to commit a crime.  In this case the United
23 States claims that between November 26th and November 29, 2016,
24 in Calhoun County you were part of such an agreement with
25 Jakeyla Janay Haynes and perhaps others; that the object of

```
 1    that conspiracy or criminal agreement was to distribute
 2    cocaine.  Do you understand what you've been charged with?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  If you're convicted of Count I, either by
 5    plea or following a trial, the maximum sentence that Judge Neff
 6    could impose would be up to 20 years in prison, a fine of not
 7    more than a million dollars, a period of supervised release of
 8    at least three years and up to life.  Supervised release is a
 9    time following your release from any prison term.  During that
10    time you'll remain under Judge Neff's supervision and subject
11    to conditions imposed by her.
12              Those conditions will include things like you not
13    commit any new crimes, probably you seek and maintain
14    employment, but there may be other conditions.  I don't know if
15    drug treatment or any kind of counseling, you know, would be
16    appropriate for you.  But if it is, she can order that as well.
17    If you violate any of the conditions she imposes, however, she
18    can send you back to prison for all or part of that supervised
19    release term.
20              Finally, there's a court cost or a special assessment
21    of $100.
22              Do you understand the maximum penalties on Count I?
23              THE DEFENDANT:  Yes, Your Honor.
24              THE COURT:  If you were to change your mind right now
25    and decide you wanted to go to trial, the government would have
```

to prove several things to convict you on Count I. Those include things like we have actually already talked about but I'll talk about them again; and that is that between November 26th and 29, 2016 in Calhoun County, there existed an illegal agreement or conspiracy between two or more people to distribute cocaine. Second, that you knew of that conspiracy, knew the purpose of the conspiracy and knowingly and intentionally joined the conspiracy.

Do you understand what the government would have to prove if you went to trial?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I'm now going to ask Mr. Courtade to briefly summarize what evidence the government would offer if you went to trial on Count I. Please listen carefully. I'm going to have a couple of questions for you when he's done. Mr. Courtade.

MR. COURTADE: Thank you. Your Honor, on November 29, 2016, the Battle Creek police had cause to stop a rental car being driven by the defendant Ryan Lane near Battle Creek, Michigan. Based on what they observed at the time of the stop, they searched the vehicle and they recovered approximately one and a half kilograms of cocaine. The defendant admitted that he brought the cocaine from Texas to Michigan. That he was, did so in conjunction with Ms. Lane (sic) who was a passenger in the vehicle. And that he was involved in a conspiracy or an

1  agreement to deliver that cocaine in Michigan.
2          THE COURT:  All right.  Thank you, Mr. Courtade.  You
3  said Ms. Lane.  I think you probably meant Ms. Haynes.
4          MR. COURTADE:  Ms. Haynes, that's correct, Your Honor.
5  And one other thing, and it's not in the plea agreement,
6  defense counsel asked me prior to coming in to court today if
7  the government would agree that the relevant conduct under the
8  sentencing guidelines in this case is limited to the cocaine
9  that was found within the vehicle.  And I agreed that we would
10 make that recommendation ultimately.
11         THE COURT:  Okay.  So do you consider that part of the
12 plea agreement?
13         MR. COURTADE:  I do at this time because he just asked
14 me before we came into court, and it seemed reasonable to me.
15 So I'm doing that.
16         THE COURT:  All right.  Thank you, Mr. Courtade.
17         All right.  Mr. Lane, did you hear Mr. Courtade's
18 description of the evidence the government --  the evidence the
19 government would offer at trial?
20         THE DEFENDANT:  Yes, Your Honor.
21         THE COURT:  Do you agree that the government could
22 produce the evidence he described?
23         THE DEFENDANT:  Yes, Your Honor.
24         THE COURT:  And do you agree that that evidence would
25 be sufficient to convict you?

1       THE DEFENDANT:  Yes, Your Honor.
2       THE COURT:  Mr. Lane, under the Sentencing Reform Act
3   of 1984, the United States Sentencing Commission has issued
4   advisory sentencing guidelines for judges like Judge Neff to
5   consult when formulating a sentence in a federal criminal case.
6   Have you discussed these guidelines with Mr. Shea and how they
7   might apply to you?
8       THE DEFENDANT:  Yes, Your Honor.
9       THE COURT:  Do you understand that Judge Neff will not
10  be able to determine what guideline range does apply to you
11  until a presentence report has been prepared?
12      THE DEFENDANT:  Yes, Your Honor.
13      THE COURT:  Do you understand that even after she
14  determines what guideline range does apply to you, she still
15  has the discretion to sentence you within that range, above the
16  range, or below the range?
17      THE DEFENDANT:  Yes, Your Honor.
18      THE COURT:  Do you understand that if the sentence
19  Judge Neff ultimately gives you is more severe than what you're
20  expecting, you'll still be bound by your guilty plea and will
21  not be able to withdraw it?
22      THE DEFENDANT:  Yes, Your Honor.
23      THE COURT:  Your plea agreement contains a cooperation
24  clause in paragraph 5 under which the United States agrees to
25  consider in good faith whether to request that Judge Neff

1 reduce your sentence in recognition of any cooperation that you
2 may provide the government in the investigation and prosecution
3 of other people. Do you understand that the government has not
4 promised to bring such a motion?
5         THE DEFENDANT: Yes, Your Honor.
6         THE COURT: The government has simply promised to
7 weigh in good faith whether or not to bring such a motion.
8         THE DEFENDANT: Yes, Your Honor.
9         THE COURT: And do you understand that even if they
10 file such a motion, Judge Neff has full discretion to deny such
11 a motion?
12         THE DEFENDANT: Yes.
13         THE COURT: And even if she grants the motion, she has
14 discretion to decide how much of a reduction to give you?
15         THE DEFENDANT: Okay.
16         THE COURT: Understand?
17         THE DEFENDANT: Yes, I do.
18         THE COURT: Mr. Lane, do you understand that parole
19 has been abolished in the federal system and if you're
20 sentenced to prison you will not be released on parole?
21         THE DEFENDANT: Yes, I understand.
22         THE COURT: Are you presently on parole or probation
23 in any other court?
24         THE DEFENDANT: No, no, Your Honor.
25         THE COURT: Do you understand the government may have

1  the right to appeal your sentence?
2  THE DEFENDANT: Yes, Your Honor.
3  THE COURT: All right. Mr. Lane, do you believe you
4  understand the nature of the charge against you in Count I, the
5  penalties as I've described them to you, and your rights in
6  this case?
7  THE DEFENDANT: Yes, Your Honor.
8  THE COURT: Understanding all of those things, how do
9  you plead to the charge contained in Count I?
10  THE DEFENDANT: Guilty.
11  THE COURT: Is your decision to plead guilty the
12  result of any force, threats, or coercion?
13  THE DEFENDANT: No, Your Honor.
14  THE COURT: Is your decision to plead guilty based at
15  least in part on promises made by the government in paragraph
16  6, including the promise by the government that it will dismiss
17  Count II if you plead to Count I?
18  THE DEFENDANT: No, no, Your Honor.
19  THE COURT: All right. I'm going to try that again.
20  Don't worry. I have not found an artful way to ask this
21  question that results in people giving the answer that they
22  think they are giving.
23  Is your decision to plead guilty at least in part,
24  your decision to plead guilty to Count I at least in part
25  because the government says if you plead to Count I we will

1    dismiss Count II?
2             THE DEFENDANT:  Yes, Your Honor.
3             THE COURT:  Okay.  And also is your decision to plead
4    guilty at least in part based on the other promises the
5    government makes in paragraph 6?
6             THE DEFENDANT:  Yes, Your Honor.
7             THE COURT:  And is your decision based at least in
8    part on Mr. Courtade's agreement here in the courthouse before
9    we went on the record today that the government will take the
10   position or for guideline purposes that the cocaine found in
11   the car on the 29th of November 2016 is the only cocaine that
12   should be used in calculating your guidelines?
13            THE DEFENDANT:  Yes, Your Honor.
14            THE COURT:  Is your decision to plead guilty a free
15   will and voluntary act by you?
16            THE DEFENDANT:  Yes, it is, Your Honor.
17            THE COURT:  Are you pleading guilty because you are in
18   fact guilty?
19            THE DEFENDANT:  Yes, Your Honor.
20            THE COURT:  Have you read the entire plea agreement?
21            THE DEFENDANT:  Yes, Your Honor.
22            THE COURT:  Do you understand every statement made in
23   the plea agreement?
24            THE DEFENDANT:  Yes, Your Honor.
25            THE COURT:  Do you agree with every statement made in

1    the plea agreement?
2           THE DEFENDANT:  Yes, I do.
3           THE COURT:  And do you agree to be bound by every part
4    of the plea agreement?
5           THE DEFENDANT:  Yes, Your Honor.
6           THE COURT:  Have you discussed the plea agreement with
7    Mr. Shea?
8           THE DEFENDANT:  Yes, I have, Your Honor.
9           THE COURT:  Has he been able to answer any questions
10   that you have about the plea agreement?
11          THE DEFENDANT:  Yes, Your Honor.
12          THE COURT:  Mr. Courtade, are there any portions of
13   the plea agreement you wish to place on the record?
14          THE DEFENDANT:  No, Your Honor.
15          THE COURT:  Mr. Shea, any portions of the plea
16   agreement you would wish to put on the record?
17          MR. SHEA:  No, Your Honor, thank you.
18          MR. COURTADE:  Your Honor, if I may cover one more
19   thing.
20          THE COURT:  Certainly.
21          MR. COURTADE:  The defendant indicated he was not
22   currently on probation or parole therefore his plea would have
23   no effect on any such case.  It occurs to me the defendant is
24   on bond in the case out of Texas, and while his plea will not
25   affect the outcome of that case, there is no admissions being

1  made; the fact that he was on bond at the time he committed
2  this offense may have an adverse consequence on his bond.  I
3  don't know if it will or if it won't.  I just wanted that on
4  the record.
5           THE COURT:  All right.  Thank you, Mr. Courtade.
6           MR. SHEA:  And that's fair.  But if the Court wants to
7  question Mr. Lane about his understanding of that, that's fine.
8           THE COURT:  Thank you, Mr. Shea.  Mr. Lane, do you
9  understand that pleading guilty here today could result in the
10 judge in Texas revoking your bond?
11          THE DEFENDANT:  Yes, Your Honor.
12          THE COURT:  In other words, you know, you're on bond.
13 I'm sure one of the conditions the judge in Texas imposed, just
14 like I do with every defendant who comes before me, is that you
15 not commit any new crimes.  Do you understand that?
16          THE DEFENDANT:  Yes, Your Honor.
17          THE COURT:  Was that a condition of your bond, if you
18 remember?
19          THE DEFENDANT:  I don't remember to be honest.
20          THE COURT:  I would almost never say that I guarantee
21 anything, but I guarantee you that was part of your bond.
22          THE DEFENDANT:  Okay.
23          THE COURT:  So it's possible that if he finds out
24 about your plea here today he could consider that a violation
25 of the conditions of your bond, revoke your bond and order you

**1** arrested. Do you understand that?

**2** THE DEFENDANT: Yes, I understand.

**3** THE COURT: Okay. All right. Mr. Lane, I want you to
**4** turn to paragraph 4 of the plea agreement. Is every statement
**5** made in paragraph 4 true?

**6** THE DEFENDANT: Yes, Your Honor.

**7** THE COURT: Do you agree with every statement made in
**8** paragraph 4?

**9** THE DEFENDANT: Yes, Your Honor.

**10** THE COURT: And do you agree to be bound by every
**11** statement made in paragraph 4?

**12** THE DEFENDANT: Yes, Your Honor.

**13** THE COURT: Mr. Courtade, do the stipulated facts set
**14** forth in paragraph 4, are they sufficient to support the plea?

**15** MR. COURTADE: Yes, Your Honor.

**16** THE COURT: All right. Mr. Shea, do you agree?

**17** MR. SHEA: I do.

**18** THE COURT: All right. Mr. Lane, I find that your
**19** plea of guilty is made knowingly and with full understanding of
**20** each of the rights that I explained to you; that it's made
**21** voluntarily and free from any force, threats or promises apart
**22** from the promises contained in the written plea agreement, and
**23** the additional promise which Mr. Courtade put on the record
**24** here this morning; I find that you understand the nature of the
**25** charge against you in Count I, the penalties provided for that

1 charge, and your rights as I explained them to you; finally, I
2 find that your plea has a sufficient basis in fact,
3 specifically, the stipulated facts contained in paragraph 4 of
4 the plea agreement.
5     I defer acceptance of the written plea agreement to
6 Judge Neff, that's her decision to make, not mine.  But I will
7 be recommending that she accept your plea of guilty and find
8 you guilty.
9     And I will prepare a written report to that effect
10 today.
11     Mr. Shea, I'm directing you to review the local rules
12 as they apply to presentence preparations, interviews and
13 conferences and comply with those.  Essentially the main thing
14 is we want you to be with Mr. Lane during the presentence
15 interview.
16     MR. SHEA:  It is my universal rule, Judge.  So I will
17 be there and we already have an appointment.
18     THE COURT:  All right.  Wonderful.  I'm ordering that
19 a presentence investigation commence and a presentence report
20 be prepared.
21     Mr. Lane, the next thing that will happen in your case
22 in all likelihood from your perspective is a presentence
23 interview.  You'll meet with a probation officer who will ask
24 you all kinds of questions about your childhood, your family,
25 your upbringing, your educational history, health history, work

1  history, criminal history, and using all of that information
2  and other information that he or she will collect, prepares the
3  written presentence report for Judge Neff.  You and Mr. Shea
4  will get a draft of that report at least a month before you're
5  sentenced.  If you disagree with anything in the report, most
6  importantly of course the guideline range, Mr. Shea will
7  attempt to work that out with the probation officer.  If he is
8  unable to do that, Judge Neff will decide any outstanding
9  issues before she sentences you.
10        Your sentencing will likely take place in late August
11 or September.  It's running about four months between the time
12 of plea and the time of sentencing right now.  Could actually
13 be longer.  Unlikely to be much shorter than that.
14        Mr. Courtade, any reason Mr. Lane shouldn't be
15 continued on bond?
16        MR. COURTADE:  No reasons, Your Honor.
17        THE COURT:  Mr. Lane, I'm going to continue you on
18 bond.  All of the terms and conditions of your bond remain in
19 full force and effect.  It's obviously, not obviously, it is an
20 important and sensitive time for you.  You have now come into
21 federal court and said, pled guilty to committing the crime
22 that you're accused of.  Judge Neff will be deciding at
23 sentencing or before whether or not you've accepted
24 responsibility for what you've done.  And if she concludes that
25 you have, it will have a positive effect on your sentence in

1  terms of reducing its length.  But if you were to do anything
2  between now and your sentencing, like you know, engage in any
3  kind of criminal activity for sure, Judge Neff is likely to
4  conclude that you haven't really accepted responsibility
5  despite the fact you came into court today and offered your
6  guilty plea.  So there's a very tangible reason for you to
7  really tow the mark with regard to your bond between now and
8  sentencing.  Do you understand?
9           THE DEFENDANT:  Yes, I do, Your Honor.
10          THE COURT:  Mr. Courtade, anything further on
11 Mr. Lane's case?
12          MR. COURTADE:  No, Your Honor.
13          THE COURT:  Mr. Shea, anything from you, sir?
14          MR. SHEA:  No.  Thank you very much, Judge.
15          THE COURT:  Mr. Lane, did you understand everything
16 that happened in court here this morning?
17          THE DEFENDANT:  Yes, I did, Your Honor.
18          THE COURT:  Do you have any questions for me before I
19 adjourn your case?
20          THE DEFENDANT:  No, Your Honor.
21          THE COURT:  Well, good luck to you.
22          THE DEFENDANT:  Thank you.
23          MR. SHEA:  Thank you, Judge.
24          THE CLERK:  All rise, please.  Court is adjourned.
25               (Proceedings concluded, 11:32 a.m.)

```
 1
 2
 3
 4
 5
 6                        C E R T I F I C A T E
 7
 8        I certify that the foregoing is a transcript from the
 9    Liberty Court Recording System digital recording of the
10    proceedings in the above-entitled matter to the best of my
11    ability.
12
13
14
15                              /s/ Kathy J. Anderson
16                              Kathy J. Anderson, RPR, FCRR
17                              U.S. District Court Reporter
18                              402 Federal Building
19                              Grand Rapids, MI   49503
20
21
22
23
24
25
```